SAM GAINES v. CHARLES TRENGROVE and Others.

August 1, 1899.

Nos. 11,707—(220).

## Contract for Carrying Mail.

Certain contracts—one between the government and a star route mail contractor, and one between the latter and a subcontractor—for the carrying of mails between certain points construed.

## Same—Cancellation by Postmaster General.

In the contract first mentioned it was stipulated that the postmaster general might annul the contract or impose forfeitures, in his discretion, for repeated failures, or for a failure to perform service according to the contract. *Held*, that the postmaster general was an umpire selected by the parties, whose decision to annul the contract or to impose forfeitures could only be impeached on the ground of fraud, or such gross mistake of the facts as would imply bad faith, or a failure to exercise honest judgment; clear, strong, and satisfactory evidence being necessary to impeach his decision on the ground of mistake.

## Same—Subcontract.

Under the federal statute the subcontract was invalid without the consent of the postmaster general. This consent and approval were obtained in the case at bar, the subcontract being expressly made subject to the postal laws, and all of the requirements found in the original. The subcontractor entered upon his duties, but, after repeated failures on his part, the postmaster general refused to allow him to carry the mails, and terminated his right so to do. *Held*, in an action brought by the contractor to recover damages for a breach of the subcontract, that the action of the postmaster general amounted to a withdrawal and cancellation of his previous approval, terminated all contractual relations between the parties to the subcontract, and virtually annulled the original. *Held*, further, that the decision of the postmaster general was conclusive on the question of a breach of the subcontract, in the absence of any claim that there had been a fraud committed, or that there was such a gross mistake of fact as would imply bad faith or a failure to exercise honest judgment on his part.

## Same—Evidence.

*Held*, further, in view of this construction of the contracts, that, if error was committed on the trial in the introduction of certain exhibits in evidence, it was error without prejudice.

Same—Verdict Sustained by Evidence.

> And *held*, further, that under the instructions of the court to the jury the verdict was justified by the evidence.

Action in the district court for St. Louis county to recover on a bond executed by defendant Trengrove as principal and by the other defendants as sureties. The case was tried before Ensign, J., and a jury, which rendered a verdict in favor of plaintiff; and from an order denying a motion for a new trial, defendants appealed. Affirmed.

*W. G. Bonham* and *Francis W. Sullivan*, for appellants.

*Washburn, Lewis & Bailey*, for respondent.

COLLINS, J.

Plaintiff, Gaines, was a star route mail contractor for the carrying of United States mails between Tower and Rainy Lake, in this state, for the four-year period commencing July 1, 1895. Defendant Trengrove was a subcontractor with plaintiff for the same service, and the other defendants were his sureties; a subcontract having been entered into May 29, 1895, between plaintiff and defendants, with the consent of the postmaster general, as required by law. 1 Supp. R. S. c. 107, § 2.

By the terms of this subcontract it appeared that plaintiff had entered into a contract with the government, and had obtained conditional permission to sublet the same from the proper officer,— without which the contract for subletting would have been void,— and in terms it was stipulated that defendant Trengrove should perform his part thereof in full compliance with the postal laws and regulations, and subject to all the requirements imposed upon plaintiff, Gaines, under his contract with the government. And upon the back thereof these regulations, requirements, and stipulations, taken bodily from such contract, were printed in full. As a part of these, and to which the contract was subject, was a stipulation that the postmaster general might annul the contract or impose forfeitures, in his discretion, for repeated failures or for a failure to perform service according to contract, or for many other acts on plaintiff's part, or failures to act. He was thus constituted an umpire as between plaintiff and the government for the purpose of

cancelling or annulling the contract or for imposing forfeitures, in his discretion, should the former become derelict in the performance of his part of the contract.

Defendant Trengrove entered upon the performance of the subcontract July 1, 1895, and continued to carry the mails up to January 16, 1897, at which time the officials of the department refused to deliver mail to him or his servants, upon the ground that he had repeatedly and habitually defaulted in carrying the mails, and without cause had abandoned his contract, and failed to perform the same in accordance with its terms. Plaintiff was notified by the department of this breach of Trengrove's contract, as well as his own, but was allowed again to attempt to fulfil his own contract, which he did by providing a mail carrier temporarily; and, later on, he again sublet, with the approval of the postmaster general.

This action was brought to recover damages because of the alleged breach of the subcontract, judgment being demanded against defendant Trengrove for the full amount, averred to be $1,514.96, and against each of his sureties for $1,000, the amount for which such sureties had become bound under the terms of their contract. The verdict was for $900 as against all of the defendants.

Counsel for the latter discuss their appeal under three heads: First, alleged errors relating to the construction to be placed upon the two contracts; second, those relating to the admission of evidence; and, third, those which bear upon the claim that on the evidence and the instructions of the court as to the measure of damages there must have been a verdict for defendants, or a verdict for plaintiff for the sum of $200.26 only, or a verdict for him in the full amount claimed.

The trial below seems to have proceeded upon the theory that it was incumbent upon plaintiff not only to show that the department annulled the subcontract by refusing longer to deliver the mails under it to defendant Trengrove, but that the latter had actually failed to perform in accordance with the terms of his own contract, and therefore that the department had good and valid reasons for its action. This whole question of the manner in which the subcontractor attempted to carry out his agreement was gone into at length, precisely as it would have been if this had been an ordinary

contract for the performance of work and labor between individuals, and there had been a breach on the part of the one who had undertaken to perform. But the contract in question is not of that character. The plaintiff had entered into an agreement with the government to carry the mails, and both parties had stipulated that the postmaster general should determine as between them when there was a failure to perform on the part of plaintiff, and should also determine the penalty to be imposed. An annulment of the contract was not to impair the right of the government to claim damages, which were to be assessed and liquidated by the auditor of the post-office department. These were among the express provisions of the original agreement. And the subcontract was made with reference to them, and to all of the postal laws, and the requirements imposed upon plaintiff. The subcontract was also void without the approval of the postmaster general, and he and the auditor were as much the umpires as between the original contractor, Gaines, and the subcontractor, Trengrove, as they were between the former and the government.

As the law required this subcontract to be approved by the postmaster general before it became valid, it must follow that this approval could be withdrawn at any time, and such withdrawal would have the effect of terminating the contractual relations theretofore existing between the parties; and if for any of the reasons stated in the original contract and also in the subcontract the umpire should annul the former, the latter would fall with it; and all damages arising thereunder could be assessed and liquidated by the other umpire agreed on for this purpose, the auditor of the post-office department. The subcontract being subject to the postal laws and the requirements of the original contract, it is obvious that the action of the umpires, the officials of the post-office department, would be controlled by the settled rule which governs when an umpire has been selected by the parties, namely, that his decision can only be impeached on the ground of fraud, or such gross mistake of the facts as would imply bad faith or a failure to exercise honest judgment. And clear, strong, and satisfactory evidence is necessary to impeach an umpire's decision on the ground of mis-

take. This rule has been applied a number of times in this court in cases where the determination of an umpire was involved.

There was no claim in this case that when the postmaster general directed that, because of his repeated failures, mails should not again be delivered to Trengrove, and thus withdrew his approval of the subcontract, and virtually annulled both contracts, he acted fraudulently, or under a gross mistake as to the facts. Giving to defendant's evidence its greatest weight, it simply tended to show that he had some excuse for failing to perform the service agreed on. Under these circumstances the decision of the postmaster general was conclusive upon the defendants, and established the allegations of the complaint in respect to a breach of the subcontract, and its termination by the act of the umpire. This view of the contracts disposes of nearly all of the claims of counsel as to the construction of the same, and also disposes of the alleged errors in the admission of evidence, principally exhibits, for, if there was error, it was without prejudice. This is evident when we realize that under the pleadings it was unnecessary to go further than to show the decision and action of the postmaster general when he withdrew his approval or consent to the further continuance of the subcontract and terminated the same, as he had a right to do.

Referring specially to the alleged error in respect to the admission in evidence of the exhibits attached to the deposition of plaintiff, Gaines, it is only necessary to say that Exhibit B was not introduced in evidence or read to the jury. Whether it should have been suppressed because not sufficiently identified is therefore immaterial.

This brings us to the contention that the verdict was not justified by the evidence, because under it and the instructions in reference to the measure of damages the verdict should have been either for plaintiff in the sum of $200.26, or for the full amount claimed, or it should have been for defendants. As before stated, the verdict was for $900 as against all of the defendants. Counsel for defendants made a general request to charge on the measure of damages numbered 9, and at the refusal of the court so to charge took an exception. But this exception has not been argued, and, even if it

had been, there would be nothing in it, for the substance of the request was given elsewhere. The request of plaintiff's counsel to charge as to the measure of damages, numbered 7, was given, and an exception taken to "that portion of No. 7 relating to the assessment of damages." This exception has not been argued, although assigned as error. But, in any event, a portion of the request was a correct statement of the law as to damages, and so the exception was too general to be of value. So defendants have not presented to this court any substantial reasons why the verdict was not warranted by the charge as to the measure of damages. And the amount thereof was clearly justified by competent evidence as to the losses sustained as the necessary result of Trengrove's failure to perform the service agreed upon. This is really conceded by counsel when they insist, as they do in their brief, that the verdict was a compromise, and, if for plaintiff in any sum, should have been for the amount of $1,000 against the sureties and for something over $1,500 against Trengrove. That the damages awarded are less than the amount for which a verdict could have been rendered is no reason for granting defendants' motion for a new trial.

Order affirmed.

CANTY, J.

I cannot concur in that portion of the above opinion which holds that the postmaster general may withdraw his consent to the subcontract after that consent has been once given. He may do this indirectly. He may cancel the principal contract, and with it the subcontract will fall. He can reinstate the principal contract on condition that the subcontract be not reinstated. If he can do these things by two separate moves, he may in good faith do all of them by one move, and may declare the principal contract forfeited unless the contractor prevents the subcontractor from performing or attempting to perform the subcontract any longer. Under such duress as this, the contractor is justified in preventing the subcontractor from attempting to further perform, as by the terms of the subcontract the postmaster general is made an umpire to determine what is sufficient cause to cancel the principal con-

tract, and that the subcontract shall abide the event of that decision.

I concur in the result and in the other portions of the opinion.